Peckham, J.
(dissenting). — It seems to me that the construction given to the statute by the general term ought not to be adopted, if there be any other rational one possible.
I think there is. Before its passage the debtor suffering imprisonment upon an execution, or committed for a contempt for the non-payment of alimony, unless relieved by the court upon an application addressed to it on the ground that he was unable to pay the money called for by the writ or order, was liable to suffer imprisonment perpetually. Since the passage of this act such a person is entitled to be discharged by the mere expiration of three or six months, depending upon the amount of the sum for which he might be held in execution or ordered to pay. This right depends upon no application to the court for its recognition, nor does it depend in the slightest degree upon the inability of the debtor to make the payment. By the simple expiration of the designated time the debtor is entitled to his discharge and it is made the duty of the sheriff to discharge him without any formal application being made therefor. This is certainly one, and a very great alteration in the law effected by the act in question, and it is certainly one which is of very great benefit to the debtor. He may, of course, apply for his discharge within the period designated by the statute, on the ground of his inability to comply, but he walks forth a free man in any event, even though able to make the payment called for by the order, at the end of the time specified. It cannot be doubted that in obtaining this right he has secured a very great privilege and benefit under this statute. Having made this provision in his favors, the statute further provides that the “ prisoner shall not be again imprisoned upon a like process issued in the same action, or arrested in any action upon any judgment under which the same may have been granted.”
We are asked to hold that that language means that in such a case as this, where there has been a judgment continuing in its nature and providing for payments of money at certain times, the discharge of the debtor upon the expiration of the three months on account of the non-payment of the money due at the time he was committed is to act as a bar to any future imprisonment grounded upon the default in paying money subsequently becoming due under this judgment. We do not think the statute means that. We think the expression “ shall not be again imprisoned upon a like process issued in the same action ” has reference to a process to collect moneys due at the time the first process was issued. And we think the same meaning is to be attributed to the language preventing another arrest, “ in any action upon any judgment under which the same may have been granted."
Both provisions had reference to a second arrest upon like pro *735 cess or upon any judgment to collect moneys which were due and payable at the time the first mandate was granted or the first execution issued. It is said that the statute was unnecessary to give relief in such a case, as in that event no second process or execution could have been issued before the statute was passed, and that in order to give any effect to the statute the meaning attributed to it by the general term must be adopted. It may be that the language is surplusage and that without it no such process could have issued. But we do not think such fact is sufficient to cause us to adopt the other construction which forbids a subsequent imprisonment to enforce the collection of moneys which were not due when the first process issued. By the very terms of the Code, before resort can be had to this means of enforcing the payment of alimony, it must appear to the court that the party was able to pay but that the plaintiff was unable to enforce such payment by execution against or sequestration of the property of the defaulting debtor.
The result of the construction given by the general term is that a party can in no case be imprisoned more than three or six months notwithstanding a confessed ability to comply with the judgment of the court. His failure to pay an installment of alimony due when the process issued is not alone satisfied-by his imprisonment for three or six months, but such imprisonment is to work full satisfaction for his future failure to pay installments which are hereafter to become due and which he is perfectly able to pay if he chooses. We cannot believe it possible that the legislature meant any such result as that.
It is further argued, however, that unless such an interpretation is given to the statute, a debtor maybe still perpetually imprisoned after he has been once discharged, because he might be at once rearrested and committed to prison for the non-payment of alimony accruing under the judgment while his imprisonment was continued, and that this might go on from time to time through the entire period of his natural life, and the intention of the law was to restrict the right of imprisonment as stated. If this were not a mere fancy sketch, and if there were in fact the least danger of any such result attending a construction other than that given by the general term, the argument in favor of its correctness would have much more weight than it seems to me its intrinsic force demands. In the first place it must be always borne in mind that this process of imprisonment may not be resorted to at the mere volition of the judgment creditor. There must not only be a default in the payment of the alimony, but as I have already said that default must appear to the court to be willful, i. e., it must appear that the debtor is able to comply with the order, and the creditor unable to enforce compliance by execution or sequestration. Then the process issues, and every day that the imprisonment continues the imprisoned debtor has the right to apply to the court, and upon showing to it that he cannot comply it is the duty of the court tp discharge him. Hnder such circumstances, there can be absolutely no danger of any such perpetual imprisonment as is suggested.
*736 But under the construction given to the statute by the court below, a defaulting but able debtor is enabled to wholly defy the-process of the court upon submission to a brief incarceration, without any labor, of three or six months within the walls of the jail. The debtor then goes forth, and removing his property beyond the-jurisdiction of the court, bids defiance to its decrees and wholly refuses to perform them.
This statute has no application to proceedings by contempt to-enforce compliance with the judgment of the court, ordering a party "to do an act (for example, sign a deed) which he has it in his power to perform. In such case the imprisonment continues, until he performs the act demanded of him by the judgment of the court, and there is no discharge for him. by enduring imprisonment for any specified time and then claiming such discharge while still refusing to comply with such order. But the amendment to § 572 of the Code, which was amended by this same statute, is alluded to as a confirmation of the correctness of the construction given to § 111 by the court below. I do not see-that the argument is at all strengthened by reference to that, amendment. It will be seen that such amendment refers, in the first place, to the case of a plaintiff who unreasonably delays the trial of the action or neglects to enter judgment or neglects to-issue execution against the person within a designated time after judgment, and in such case the defendant is to be discharged from the original order of arrest, and the section then further provides that when it appears, to the satisfaction of the court, that the plaintiff in an action, or a judgment-creditor in a judgment, delays the enforcement of his remedies therein by collusion, for the purpose of allowing the debtor to remain in prison under the mandate in any other action before the issuing of the mandate in favor of such creditor, so as to produce a continued and extended imprisonment by virtue of the separate mandates in the different actions, then the defendant is to be discharged upon notice, if already imprisoned, or relieved from imprisonment by virtue of the mandate unless reasonable cause is shown why the application should not be granted. There must be collusion in omitting the enforcement of remedies for the purpose of allowing the debtor to remain in prison under the mandate in another action, so as to produce a continued and extended imprisonment by virtue of the separate mandates in the different actions, and when such purpose exists, the statute declares in favor of the discharge of the debtor. It was the collusive attempt on the part of several judgment-creditors, by issuing their process' seriatim, to hold their debtor in prison for a longer time than could be accomplished by any one of the writs that the statute was directed against. It seems to me that no argument can be drawn from it in favor of the proposition that the imprisonment of a debtor for three or six months, upon a process to compel his compliance with an order for the payment of money then due, should operate as a bar to any future imprisonment for his non-compliance with an order to pay money which became due thereafter.
In such case the imprisonment is not within the fair meaning of *737 the language prohibiting it upon a like process issued in the same action, or upon any judgment under which the imprisonment may have been granted. See Levy v. Salomon, 105 N. Y., 533; 8 N. Y. State Rep., 16.
It cannot be supposed to have been the legislative intent to make a past imprisonment for a past default operate as a bar to a future imprisonment on account of a future default, willful in its nature, and which could be terminated by a compliance with the order of the court, and which compliance the party was entirely able to make. We think no intendment of such a nature should be indulged in, grounded upon the general principle that statutes in favor of the liberty of the citizen should be liberally construed. This is a statute which , interpreted in that way, takes from a court of equity one of its strongest remedies to secure the enforcement of its decrees against willfully disobedient parties. The failure or refusal to pay the alimony decreed, when the party is able, is just as inexcusable as the willful refusal of a party to sign a deed required of him by the decree of a court, and there is no more reason in equity or mercy why such a party should be relieved more than the other. The statute, however, says that in one case he shall be relieved at the end of a certain time whether he has complied or not, and whether he is able to comply or not, and such being its plain meaning, the statute must be enforced to the letter, but it should not be extended to a case which is not within its fair meaning, and on the contrary is, as we think, wholly outside of it
It is said that the prohibition of the statute is useless unless so construed, because without it no imprisonment could be directed for the same default after a party had been discharged either by the lapse of time, or by the order of the court founded upon the inability of the party to comply.
It is no very novel matter for the legislature, from abundant caution, to use language in a statute which is not absolutely necessary to accomplish its purpose. Language of a like import has been used in the Code in relation to matters of a similar nature. Section 1494 of the Code provides for the voluntary discharge of a debtor by his creditor from imprisonment. After such a discharge it would be conceded that the creditor would not have the right to again imprison him for the same default, yet the statute proceeds to declare that “ another execution against the person of the judgment-debtor cannot be issued upon the same judgment.”' Suppose he had been thus voluntarily discharged in the case of a continuing judgment for the payment of alimony, would the language of the above provision apply to a case of a subsequent failure to pay alimony which by the terms of the judgment subsequently became due ? We think clearly .not, and yet the provision prohibiting another imprisonment for the same default was wholly unnecessary.
Upon the best consideration we have been able to give the case, we think the statute under consideration applies only to cases of the default which existed when the process issued, and that it is not *738 " like process ” within the fair meaning of the statute when it is issued to compel the payment of money which was not due under the judgment at the time such process was issued.
The order of the general term should, therefore, be reversed and that of the special term affirmed, with costs.
Order affirmed with costs, on opinion below.
Andrews, Earl, Finch and Gray, JJ., concur; Peckham, J., reads for reversal: Danforth, J., concurs; Ruger, Ch. J., not voting.