Klara G. BOLDEN, Appellant,

v.

Edgar L. BOLDEN, Appellee.

No. 10773.

District of Columbia Court of Appeals.

Argued March 17, 1977.

Decided July 11, 1977.

Ann R. Steinberg, Washington, D. C., with whom Marna S. Tucker, Washington, D. C., was on the brief, for appellant. Ann M. Garfinkle, New York City, also entered an appearance for appellant.

Bobby B. Stafford, Arlington, Va., for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER and YEAGLEY, Associate Judges.

NEWMAN, Chief Judge:

Adjudicated in civil contempt of court for failure to comply with the real estate disposition provisions of a divorce decree, appellant contends on appeal that the trial court erred in finding her conduct to be contemptuous. We affirm.

The protracted nature of these actions in the trial court and the nature thereof necessitate a detailed recitation of the facts.

These proceedings commenced when appellant filed a petition for support in January 1973. The litigation disclosed the break-up of a marriage which had existed since 1945. An Order of Support was entered on March 26, 1973.[1] After intervening litigation concerning change of custody and support arrears, appellee filed suit for absolute divorce on the ground of one year voluntary separation without cohabitation.[2]

On May 19, 1975, when the case came on for trial on the divorce complaint, the parties, both of whom were represented by counsel, entered into a settlement stipulation resolving all property and financial issues between the parties.[3] The court fully interrogated appellant concerning her understanding of the stipulation and her agreement thereto. After being fully satisfied with the fairness and lawfulness of the stipulation of settlement, the court heard testimony concerning the divorce. During appellant's testimony on this issue, the court again inquired concerning her understanding of and assent to the stipulation of settlement. Again being satisfied, the court ruled on the relevant issues; approved and adopted the stipulation of settlement; and directed that an appropriate judgment order be presented.[4]

On June 2, 1975, appellant forwarded to the trial judge a "Motion To Set Aside Trial Proceedings and Order and Certification of Case to Contested Calendar."[5] Opposition was filed to said motion by appellee. On July 1, 1975, the trial court entered an order denying appellant's motion.[6] No appeal was taken from this ruling or from the divorce decree (which incorporated the stipulation of settlement) entered on the same date. Thus, these orders became final and are not challenged in this appeal.

On September 16, 1975, some 75 days after the entry of the order directing appellant to proceed forthwith with the sale of the real estate for the highest price obtainable, appellee filed a motion seeking to have appellant adjudicated in contempt of court for refusing to facilitate sale of the real estate as directed by the court's order of July 1, 1975. An evidentiary hearing was conducted on December 17, 1975.[7] The tes-

1. Although the record is unclear, it appears that this may have been a consent order.

2. D.C.Code 1973, § 16–904(a). This action was filed on January 24, 1974.

3. At that time, appellant was represented by her third attorney, she having terminated the services of her two prior ones.

4. The alimony and child support provisions of said order required that appellee pay to appellant monthly, approximately $900.00 plus supplemental benefits of health insurance and the like.

5. The copy of this motion contained in the record on appeal bears a stamped notation indicating it was received in the Chambers of Judge Murphy on June 2, 1975. Yet, it bears the file stamp of the Clerk of the Court indicating it was filed on July 1, 1975. No reason is disclosed for the appellant's failure to timely file said motion with the Clerk of the Court. *See* Super.Ct.Dom.Rel.R. 12–I(d).

This motion also contained a prayer that counsel be permitted to withdraw. *See* note 3 *supra*.

6. The trial court found that appellant had knowingly and willingly entered into the stipulation of settlement and that there was no evidence of coercion, fraud, mistake, or overreaching.

7. Appellant was represented at this proceeding by her fourth attorney of record. Her testimony at this hearing indicated she had consulted at least one other attorney as well. Present counsel who briefed and argued this appeal were not counsel in the court below.

timony at this hearing consisted of appellant's statement that the only steps she had taken to effect the sale of the real estate had been to permit one real estate appraiser access to the premises and unsuccessful attempts to obtain new living accommodations for herself and five children.[8] She contended, as she does here, that her difficulty in finding alternative living accommodations justified her conduct in delaying the sale of the real estate. By order entered December 24, 1975, the trial court rejected this contention; found her in contempt of court; and sentenced her to 10 days in confinement. Execution of the sentence was suspended upon the condition that she vacate the real estate on or before January 17, 1976.

On January 8, 1976, appellant filed a motion seeking a modification of the order of December 24, 1975, which adjudicated her in contempt. In essence, this motion sought an extension of the time in which to sell the real estate and vacate. The stated purpose was to permit an adult son of the parties to purchase the property and to allow additional time for that purpose. A hearing was conducted on January 19, 1976. Counsel for appellant outlined the attempts made by appellant to obtain alternative housing. The trial court, expressing the clear view that the orders of the court were still being contemptuously disobeyed, nevertheless granted a continuance to permit attempts to sell the property to the adult son.

Further hearings were conducted on January 27 and 28. After hearing representations from counsel on both dates, the court ordered that within 48 hours, the property be listed with a real estate broker for sale, subject to the right of the parties' adult son to purchase. The court also vacated the 10-day jail sentence provided by the order of December 24, 1975. In lieu thereof, the court imposed a civil contempt fine of $75.00 per day upon appellant.[9]

Yet another hearing was conducted on March 1 at which counsel for appellant conceded that appellant still refused to list the real estate for sale as ordered in spite of the advice of counsel. At the conclusion of said hearing, the court again found the appellant to be in contempt. A trustee was appointed to sell the real estate.[10] These rulings were incorporated into a written order which was entered on March 9, 1976. This appeal followed.

■ It is axiomatic in our system of jurisprudence that where a court with jurisdiction over both the subject matter and the parties enters an order, such order must be obeyed. *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Appellant having failed to challenge by appeal the judgment of July 1, 1975, which included the property settlement, that judgment is final, binding, and not subject to our review. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). She was under a continuing duty to comply therewith. Noncompliance cannot be justified by seeking to establish that the judgment was improvident. Rather, justification is established only upon a showing of inability to perform or substantial performance. *Maggio v. Zeitz, supra; Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad*, 127 U.S.App. D.C. 23, 380 F.2d 570 (1967).

■ Appellant appears to contend that a finding of wilfulness is required before an alleged contemnor can be adjudicated in civil contempt. Such is not the law. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). As the Supreme Court there stated:

The absence of wilfulness does not relieve from civil contempt. Civil as distin-

---

8. One of these children was a 22-year old adult daughter attending college who was not covered by the support provisions of the divorce decree.

9. This oral order was incorporated in a written order signed February 10, 1976, but not filed with the Clerk of the Court until March 9, 1976.

10. At oral argument on March 17, 1977, counsel informed this court that appellant was still occupying subject real estate and that sale still had not been made.

guished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. [Citations omitted.] Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. [Footnote omitted.] The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. . . . An act does not cease to be a violation of . . [the order] . . . because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions. . . . The private or public rights that the decree sought to protect are an important measure of the remedy. [*Id.* at 191, 69 S.Ct. at 499]

■ As can thus be seen, the general rule with respect to civil contempt is that where noncompliance with a judicial order has been factually established, the burden of establishing justification for noncompliance shifts to the alleged contemnor. Such cases as *Johnson v. Johnson,* D.C.App., 195 A.2d 406 (1963); *Truslow v. Truslow,* D.C. App., 212 A.2d 763 (1965), and *Campbell v. Campbell,* D.C.App., 353 A.2d 276 (1976), to which appellant points are not to the contrary. The fountainhead for this line of cases is *Lundregan v. Lundregan,* 102 U.S. App.D.C. 259, 252 F.2d 823 (1958). The limitations on the sanction of civil contempt recognized therein related solely to confinement for nonpayment of a debt. It recognized that under our law, imprisonment for nonpayment of a debt was permissible only where specifically authorized by statute. The only statutes so providing were and are those provisions of Chapter 9, Title 16, D.C. Code, relating to a spouse's failure or refusal to comply with a judicial decree of alimony or child support, *while able to pay.* In essence, *Lundregan* holds that given these factors and the terms of the statute, movant must present evidence of the alleged contemnor's present ability to pay.

As thus seen, the case here at issue does not fall within the exception created by the *Lundregan* line of cases. The order here appealed imposes a fine rather than imprisonment. Further, the sanction imposed was not for failure to pay a debt. Rather, it was for failure to do specific acts to facilitate the sale of real estate. Thus, it is by the general rule, rather than by the *Lundregan* exception that appellant's conduct must be measured.

■ From July 1, 1975, to March 9, 1976, appellant had been repeatedly advised of her duty pursuant to court order to proceed with the sale of the property. The normal activities incident to such sale were set in motion by appellee and his attorney with the assistance of the various trial counsel for appellant. With rare exception, these efforts were brought to naught by appellant's refusal to cooperate. The sole justification tendered by appellant for her conduct was her alleged inability to obtain alternative housing. The trial court, aware from the record that appellant had income of approximately $900.00 in alimony and child support as well as a substantial equity in the real estate, found that the efforts of appellant were not made in a good faith attempt to comply with the court order. This finding is fully supported by the evidence. The position of appellant is evident from her refusal to cooperate with attempts to sell the real estate to anyone but her adult son, who intended to permit her continued occupation thereof. And therein lay the nub. The record makes crystal clear the intention of appellant to continue residing in the real estate at any cost. In face of clear and specific court orders requiring her to act and repeated explicit warnings that her disobedience would be punished, appellant voluntarily undertook a calculated risk not to act. She did so against the advice of her own counsel. The trial court found that her conduct merited the sanction of a civil contempt adjudication. This finding is fully supported by the evidence and is not legally erroneous. Thus, it cannot be disturbed by this court. D.C.Code 1973, § 17–305(a).

■ One further contention merits note. Appellant asserts that since termination of

the running of the per diem fine is tied to execution of a contract for sale, she cannot purge herself of contempt by her sole act. Thus, she contends, the contempt adjudication should be reversed. While it is by no means clear that a civil contempt adjudication requiring procuring as well as executing a contract of sale in order to be purged would be *de hors* the authority of the court in this case, see *McComb v. Jacksonville Paper Co., supra,* we need not decide the question of the extent of appellant's ultimate pecuniary liability for civil contempt at this time. So far as is shown by this record, no final order of the trial court has been entered fixing the total amount of the fine. No fine has been paid by appellant, nor have any of her assets been sequestrated. While these facts do not render the contempt adjudication nonappealable, see *Berman v. United States,* 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937); *In re Cys,* D.C.App., 362 A.2d 726 (1976); *West v. United States,* D.C.App., 346 A.2d 504 (1975), they do render premature our consideration of this question. We have no occasion to review that which has not yet been fully adjudicated in the trial court.[11]

*Affirmed.*

---

11. We have carefully reviewed appellant's remaining contentions and find them without merit.